## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAPE FEAR VALLEY MEDICAL CENTER**<br>1638 Owen Drive<br>Fayetteville, NC  28304 | ) ) ) ) |
| **METHODIST HOSPITAL**<br>300 West Huntington Drive<br>Arcadia, CA  91007 | ) ) ) ) |
| **PACIFICA HOSPITAL OF THE VALLEY**<br>9449 San Fernando Road<br>Sun Valley, CA  91352 | ) ) ) ) |
| **COMMUNITY MEMORIAL HOSPITAL**<br>147 North Brent Street<br>Ventura, CA  93003 | ) ) ) ) |
| **ST. FRANCIS HOSPITAL AND MEDICAL CENTER**<br>114 Woodland Street<br>Hartford, CT  06105 | ) ) ) ) ) |
| **HARTFORD HOSPITAL**<br>80 Seymour Street<br>Hartford, CT  06102 | ) ) ) ) |
| **THE DANBURY HOSPITAL**<br>24 Hospital Avenue<br>Danbury, CT  06810 | ) ) ) ) |
| **THE HOSPITAL OF CENTRAL CONNECTICUT**<br>**AT NEW BRITAIN GENERAL**<br>389 John Downey Street<br>New Britain, CT  06050 | ) ) ) ) ) |
| **NCH BAKER DOWNTOWN**<br>350 Seventh Street North<br>Naples, FL  34102 | ) ) ) ) |
| **LARKIN COMMUNITY HOSPITAL**<br>7031 Southwest 62nd Avenue<br>South Miami, FL  33143 | ) ) ) ) |

Case No.

COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

**COX NORTH HOSPITAL**                                          )
1423 North Jefferson Avenue                                     )
Springfield, MO  65802                                          )
                                                               )
**OZARKS MEDICAL CENTER**                                       )
1100 Kentucky Avenue                                            )
West Plains, MO  65775                                          )
                                                               )
**MARY LANNING MEMORIAL HOSPITAL**                              )
715 N. Saint Joseph Ave.                                        )
Hastings, NE  68901                                             )
                                                               )
**CAROLINAS MEDICAL CENTER-NORTHEAST**                          )
920 Church Street North                                         )
Concord, NC  28025                                              )
                                                               )
**SCOTLAND MEMORIAL HOSPITAL**                                  )
500 Lauchwood Drive                                             )
Laurinburg, NC  28352                                          )
                                                               )
**ATRIUM HEALTH CLEVELAND**                                     )
201 East Grover Street                                          )
Shelby, NC  28150                                              )
                                                               )
**ATRIUM HEALTH KINGS MOUNTAIN**                                )
706 West King Street                                            )
Kings Mountain, NC  28086                                      )
                                                               )
**ATRIUM HEALTH WAKE FOREST BAPTIST**                           )
**WILKES MEDICAL CENTER**                                       )
1370 West D Street                                              )
North Wilkesboro, NC  28659                                    )
                                                               )
**COLUMBUS REGIONAL HEALTHCARE SYSTEM**                         )
500 Jefferson Street                                            )
Whiteville, NC  28472                                          )
                                                               )
**UNC HEALTH BLUE RIDGE**                                       )
2201 South Sterling Street                                      )
Morgantown, NC  28655                                          )
                                                               )
**ATRIUM HEALTH ANSON**                                         )
500 Morven Road                                                )
Wadesboro, NC  28170                                           )

**ATRIUM HEALTH PINEVILLE**                )
2001 Vail Avenue                           )
Charlotte, NC  28207                       )
                                           )
**CAROLINAS MEDICAL CENTER**               )
1000 Blythe Boulevard                      )
Charlotte, NC  28203                       )
                                           )
**ATRIUM HEALTH STANLY**                   )
301 Yadkin Street                          )
Albemarle, NC  28002                       )
                                           )
**ATRIUM HEALTH UNION**                    )
600 Hospital Drive                         )
Monroe, NC  28112                          )
                                           )
**ATRIUM HEALTH LINCOLN**                  )
200 Gamble Drive                           )
Lincolnton, NC  28093                      )
                                           )
**ATRIUM HEALTH LINCOLN**                  )
4130 US Highway 64 East                    )
Murphy, NC  28906                          )
                                           )
**ATRIUM HEALTH UNIVERSITY CITY**          )
8800 North Tryon Street                    )
Charlotte, NC  28262                       )
                                           )
**MEDCENTER ONE HOSPITAL**                 )
300 N 7th St.                              )
Bismark, ND  58506                         )
                                           )
**ASANTE ROGUE REGIONAL MEDICAL CENTER**   )
2825 East Barnett Road                     )
Medford, OR  97504                         )
                                           )
**ANMED HEALTH**                           )
800 North Fant Street                      )
Anderson, SC  29621                        )
                                           )
**BON SECOURS SAINT FRANCIS HOSPITAL**     )
2095 Henry Tecklenburg Drive               )
Charleston, SC  29414                      )
                                           )

COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

**ROPER HOSPITAL**                                    )
316 Calhoun Street                                    )
Charleston, SC  29401                                 )
                                                      )
**MOUNT PLEASANT HOSPITAL**                           )
3500 Highway 17 North                                 )
Mount Pleasant, SC  29466                             )
                                                      )
               Plaintiffs,        )
                                                      )    Case No.
        v.                                )
                                                      )
**ROBERT F. KENNEDY, JR.,** In his Capacity as        )
Secretary of the U.S. Department                      )
of Health and Human Services                          )
200 Independence Avenue, S.W.                         )
Washington, D.C. 20201                                )
                                                      )
              Defendant.         )
_____              )


## COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

Cape Fear Medical Center et al.,  (hereinafter "Plaintiffs" or "Hospitals") bring this action against defendant Robert F. Kennedy Jr., in his official capacity as the Secretary (the "Secretary") of the Department of Health and Human Services ("HHS"). As confirmed by two recent district court decisions, the Centers for Medicare & Medicaid Services ("CMS") was obligated to calculate a certain reimbursement proxy for the Hospitals in a specified way. Yet CMS has not done so, despite having the relevant information. Two final agency determinations wrongly permitted this non-compliance. These arbitrary and capricious final determinations must be set aside, and each of the Hospitals' Medicare reimbursement proxies must be recalculated in accordance with the opinion of the U.S. Supreme Court in *Advocate Christ Medical Center v. Becerra,* No. 23-715 (April 29, 2025).

This is a civil action brought to obtain judicial review of decisions rendered on May 6, 2025 and June 2, 2025 by the Provider Reimbursement Review Board ("PRRB" or "Board"), acting as a component of HHS, denying the requests for expedited judicial review (EJR) made by the Plaintiffs (EJR denial letters attached hereto as **Exhibits A1** and **A2**). Plaintiffs' requests for expedited judicial review that gave rise to the Board's denials were delivered to the Board on April 22, 2025 (**Exhibit "B1"**) and on May 16, 2025 (**Exhibit B2** through **B4**), As noted above, each such EJR request was denied. The four (4) EJR requests are collectively referred to herein for efficiency's sake as **Exhibit B** inasmuch as they are together identical in content.

## <u>INTRODUCTION</u>

1.      This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§1395 *et seq.* (the <u>Medicare Act</u>), the Administrative Procedure Act, 5 U.S.C. §§551 *et seq.* (the <u>APA</u>), and other authorities. The Medicare Fraction (SSI) - Statutory & Systemic Errors issue in this action refers to how certain inpatient hospital days should be addressed for purposes of calculating

the Hospitals' Medicare fractions of their Medicare disproportionate share hospital ("DSH") payments for fiscal years ("FYs") 2006, 2010, 2011 and 2013.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction under 42 U.S.C. §1395oo(f) (appeal of final Medicare program agency decision) and 28 U.S.C. §1331 (federal question) and §1361 (mandamus).

4.    This civil action is filed within sixty (60) days of the date the Hospitals are deemed to have received the decision of the PRRB denying their requests for EJR.

5.    Venue lies in this judicial district pursuant to 42 U.S.C. §1395oo(f)(1) and 28 U.S.C. § 1391(e)(1).

## PARTIES

6.    The Hospitals, their Medicare Provider Numbers and fiscal years appealed are listed below:

| PROVIDER | PROVIDER NO. | FISCAL YEAR(S) |
|---|---|---|
| 1) METHODIST HOSPITAL | 05-0238 | 2006 |
| 2) PACIFICA HOSPITAL OF THE VALLEY | 05-0378 | 2006 |
| 3) COMMUNITY MEMORIAL HOSPITAL | 05-0394 | 2006 |
| 4) ST. FRANCIS HOSPITAL AND MEDICAL CENTER | 07-0002 | 2006 |
| 5) HARTFORD HOSPITAL | 07-0025 | 2006 |
| 6) THE DANBURY HOSPITAL | 07-0033 | 2006 |
| 7) THE HOSPITAL OF CENTRAL CONNECTICUT AT NEW BRITAIN GEN | 07-0035 | 2006 |
| 8) NCH BAKER DOWNTOWN | 10-0018 | 2006 |
| 9) LARKIN COMMUNITY HOSPITAL | 10-0181 | 2006 |
| 10) COX NORTH HOSPITAL | 26-0040 | 2006 |
| 11) OZARKS MEDICAL CENTER | 26-0078 | 2006 |
| 12) MARY LANNING MEMORIAL HOSPITAL | 28-0032 | 2006 |

COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

| | | |
|---|---|---|
| 13) CAROLINAS MEDICAL CENTER-NORTHEAST | 34-0001 | 2010,2011,2013 |
| 14) SCOTLAND MEMORIAL HOSPITAL | 34-0008 | 2011 |
| 15) ATRIUM HEALTH CLEVELAND | 34-0021 | 2010-2011 |
| 16) CAPE FEAR VALLEY MEDICAL CENTER | 34-0028 | 2006 |
| 17) ATRIUM HEALTH KINGS MOUNTAIN | 34-0037 | 2010,2011,2013 |
| 18) ATRIUM HEALTH WAKE FOREST BAPTIST WILKES MEDICAL CENTER | 34-0064 | 2010,2011,2013 |
| 19) COLUMBUS REGIONAL HEALTHCARE SYSTEM | 34-0068 | 2010,2011 |
| 20) UNC HEALTH BLUE RIDGE | 34-0075 | 2010,2011 |
| 21) ATRIUM HEALTH ANSON | 34-0084 | 2010,2011 |
| 22) ATRIUM HEALTH PINEVILLE | 34-0098 | 2010,2011,2013 |
| 23) CAROLINAS MEDICAL CENTER | 34-0113 | 2010,2011,2013 |
| 24) ATRIUM HEALTH STANLY | 34-0119 | 2010,2011 |
| 25) ATRIUM HEALTH UNION | 34-0130 | 2010,2011,2013 |
| 26) ATRIUM HEALTH LINCOLN | 34-0145 | 2010,2011,2013 |
| 27) ATRIUM HEALTH LINCOLN | 34-0160 | 2009,2011 |
| 28) ATRIUM HEALTH UNIVERSITY CITY | 34-0166 | 2010,2011,2013 |
| 29) MEDCENTER ONE HOSPITAL | 35-0015 | 2006 |
| 30) ASANTE ROGUE REGIONAL MEDICAL CENTER | 38-0018 | 2006 |
| 31) ANMED HEALTH | 42-0027 | 2010,2011,2013 |
| 32) BON SECOURS SAINT FRANCIS HOSPITAL | 42-0065 | 2010 |
| 33) ROPER HOSPITAL | 42-0087 | 2010 |
| 34) MOUNT PLEASANT HOSPITAL | 42-0104 | 2011 |

At all relevant times, the Hospitals had Medicare provider agreements and were eligible to participate in the Medicare program.

7.      Defendant, Robert F. Kennedy Jr., Secretary of HHS, 200 Independence Avenue, S.W., Washington D.C. 20201, is the federal officer responsible for the administration of the Medicare program. Defendant Kennedy Jr. is sued in his official capacity.

## GENERAL BACKGROUND OF THE MEDICARE PROGRAM

8.      The Medicare Statute establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease. 42 U.S.C. §1395c. The Medicare program is federally funded and administered by the Secretary through CMS (formerly the Health Care Financing Administration ("HCFA")) and its contractors. 42 U.S.C. §1395kk(a); 42 Fed. Reg. 13,262 (Mar. 9, 1977).

9.      CMS implements the Medicare program, in part, through rulemaking. *See* 42 C.F.R. §401.108. In addition to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, CMS publishes other, putative interpretive rules implementing the Medicare program, which are compiled in CMS manuals. The Secretary also issues other subregulatory documents relating to the Medicare program, which generally do not have the force and effect of law.

10.     The Medicare program has five parts: A, B, C, D, and E. Part C of the Medicare program provides for coverage and payment for, among others, inpatient hospital services on a fee-for-service basis.   42 U.S.C. §§ 1395w-22. Part A services are furnished to Medicare beneficiaries by "providers of services," including hospitals, which have entered into written provider agreements with the Secretary, pursuant to 42 U.S.C. §1395cc, to furnish hospital services to Medicare beneficiaries. The appeals at issue in this action involve only Part A of the Medicare program.

11.    CMS pays providers participating in Part A of the Medicare program for covered services rendered to Medicare beneficiaries through MACs. *See* 42 U.S.C. § 1395kk-1(a). Each Medicare-participating hospital is assigned to a MAC.   42 U.S.C. § 1395kk-1(a)(3)(B). The amount of the Medicare Part A payment to a hospital for services furnished to Medicare beneficiaries is determined by its MAC based on instructions from CMS. *See* 42 C.F.R. § 405.1803.

## THE MEDICARE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEM

12.    Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted the Hospital Inpatient Prospective Payment System ("IPPS") to reimburse hospitals, including the Hospitals, for inpatient hospital operating costs. *See* 42 U.S.C. § 1395ww(d). Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospitals. Rather, they are based on predetermined, nationally applicable rates based on the diagnosis of the patient determined at the time of discharge from the inpatient stay, subject to certain payment adjustments. *See id.* One of these adjustments is the Medicare "disproportionate share hospital" or "DSH" payment. *See* 42 U.S.C. §1395ww(d)(5)(F).

## THE MEDICARE DSH ADJUSTMENT

13.    Hospitals that treat a disproportionately large number of low-income patients are entitled by statute to a Disproportionate Share Hospital (DSH) adjustment, in addition to standard Medicare payments. 42 U.S.C. §1395ww(d)(5)(F).

14.    The DSH program was enacted by Congress in the Consolidated Omnibus Budget Reconciliation Act of 1985 and took effect beginning with discharges on or after May 1, 1986. Pub. L. No. 99-272, § 9105, 100 Stat. 158-60 (Apr. 7, 1986).

15.    Congress enacted the DSH adjustment in recognition of the relatively higher costs associated with providing services to low-income patients. These higher costs have been found to result from the generally poorer health of these patients. The DSH adjustment provides additional Medicare reimbursement to hospitals for the increased cost of providing services to their low-income patients.

16.    With respect to the cost year at issue, there were two methods of determining qualification for a DSH adjustment: the more common "proxy method" (42 U.S.C. §1395ww(d)(5)(F)(i)(I)) and the less common "Pickle method" (42 U.S.C. §1395ww(d)(5)(F)(i)(II)). The Hospitals' DSH calculations at issue were made using the proxy method, under which entitlement to a DSH adjustment, as well as the amount of the DSH payment, is based on the hospital's "disproportionate patient percentage" or "DPP." 42 U.S.C. §1395ww(d)(5)(F)(v) and (vi).

17.    The DPP is the sum of two fractions, which are designed to capture the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year ("inpatient days"). 42 U.S.C. §1395ww(d)(5)(F)(vi). Thus, the two fractions serve as a "proxy" to determine low-income patients, rather than having CMS count the actual number of those patients.

18.    The first fraction, referred to as the "Medicare Fraction," accounts for inpatients who are current Medicare Part A recipients and also entitled to Supplemental Security Income (SSI) benefits, a federal low-income supplement. The Medicare Fraction is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplementary security income benefits (excluding any State

> supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under Part A of this subchapter[.]

42 U.S.C. §1395ww(d)(5)(F)(vi)(I). The Medicare Fraction, therefore, is the percentage of a hospital's Medicare Part A-entitled inpatients who were also entitled to SSI benefits at the time that they were receiving inpatient services at the hospital. The Medicare Fraction is at issue in this case.

19.     The second fraction, referred to as the "Medicaid Fraction," is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX, but who were not entitled to benefits under part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. §1395ww(d)(5)(F)(vi)(II).

20.     The Medicaid Fraction, therefore, is intended to account for hospital inpatients "who were not entitled to benefits under [Medicare] [P]art A," but who were "eligible for medical assistance" under the Medicaid State plan at the time that they were receiving inpatient services at the hospital.

21.     The Secretary's inclusion in the Hospitals' Medicare Fractions' *denominators* of days when the patients are eligible for Medicare Part C (hereinafter "Part C days") and exclusion from the Hospitals' Medicare Fractions' *numerators* of days associated with individuals who were entitled to SSI but who were not assigned one of the three payment status codes CO1, MO1 or MO2 (hereinafter "SSI non-paid days") for fiscal years 1988-2013 is at the heart of this action.

## LITIGATION AND REGULATION REGARDING PART C DAYS AND SSI PATIENT DAYS

22.     The fiscal year (FY) 2005 IPPS final rule, which was determined to be procedurally invalid by the United States Court of Appeals for the D.C. Circuit in 2014, required the inclusion of Part C days in the Medicare Fraction. *See Allina Health Servs. v. Sebelius*, 46 F.3d 1102 (D.C. Cir. 2014) (Allina I). While this litigation was pending, the Secretary re-proposed its policy on Part C days and finalized its policy, giving it prospective effect, effective for discharges on or after October 31, 2013, in the FY 2014 IPPS final rule. *See* 78 Fed. Reg. 50,496, 50,620 (Aug. 19, 2013) (the "2013 Rule"). Notwithstanding the ruling in Allina I, the Secretary continued to direct its MAC to place Part C days in the Medicare Fraction for discharges prior to October 31, 2013. Plaintiff hospitals in *Azar v. Allina Health Services*, 139 S. Ct. 1804 (June 3, 2019) (Allina II), challenged published Medicare Fractions calculated with Part C days included in their denominators for FY 2012. The Supreme Court held that CMS was required to engage in notice-and-comment rulemaking before assuming an "avowedly gap-filling policy" of including Part C patient days in the Medicare fraction for purposes of calculating the DPP.

23.     The Supreme Court was presented with the issue of interpreting the DSH statue's text with regard to the meaning of "entitled" in *Becerra v. Empire Health Foundation, for Valley Hospital Medical Center*, 597 U.S. 424, 435 (June 24, 2022). In its decision, the Court held that, with respect to non-pay days (i.e., exhausted days and Medicare Secondary Payer (MSP) days) "being 'entitled' to Medicare benefits . . . means—in the [DSH] fraction descriptions, as throughout the statute—meeting the basic statutory criteria." The Court concluded that the "[t]ext, context, and structure all support calculating the Medicare fraction HHS's way. In that fraction, individuals 'entitled to [Medicare Part A] benefits' are all those qualifying for the program." *Empire*, 597 U.S. at 445. CMS did not adopt this interpretation of "entitled" regarding SSI benefits,

however; thus, it continues to count a patient as "entitled" to SSI benefits only if a patient received an SSI cash payment for the month of his or her hospital stay. 75 Fed. Reg. 50,042, 50,280-281 (Aug. 16, 2010).

24.     The most recent regulatory issuance on the matter of Part C days occurred is CMS's final rule, CMS-1739-F, following the Supreme Court's ruling in *Allina*, on June 9, 2023. This final rule retroactively treats Part C enrollees as "entitled to Part A" for cost reporting periods starting before October 1, 2013, essentially retrospectively adopting its FY 2014 IPPS final rule regarding the treatment of Part C days while circumventing the requisite notice-and-comment rulemaking under *Allina*. Under this rule, a hospital's DPP will be calculated by including Part C days in the Medicare fraction, as CMS considers Part C enrollees to be "entitled to benefits under part A." *See* 88 Fed. Reg. 37,772, 37,776 (June 9, 2023) (Exhibit A).

25.     On June 10, 2024, certiorari was granted by the Supreme Court for *Advocate Christ Medical Center v. Becerra*, in which the United States Court of Appeals for the District of Columbia Circuit upheld the Secretary's interpretation of "entitled to [SSI]". The petitioners, *Advocate Christ Medical Center et. al.*, have claimed that because the phrase "entitled … to benefits" appears twice in the same sentence of the Medicare Act, it should mean the same thing for both Medicare part A and SSI, and thus the petitioners' interpretation regarding the inclusion of SSI eligible days should be adopted by CMS. *Advocate Christ Medical Center, et al. v. Becerra,* No. 22-5214 (U.S. 2023), Writ of Certiorari to the United States Court of Appeals For The District Of Columbia Circuit. The Supreme Court heard the oral argument on November 5, 2024, and a decision was rendered on April 29, 2025 in favor of the Secretary, affirming the interpretation advanced by HHS that SSI benefits can only mean SSI cash benefits determined on a monthly basis and foreclosing the inclusion of days where patients are eligible for non-cash SSI benefits.

*Importantly, however* the Court's narrow decision expressly declined to consider significant questions raised by hospitals, such as Plaintiffs herein over HHS's use of a limited universe of codes denoting SSI-entitlement, where additional codes also show that a beneficiary is entitled to SSI cash benefits. That is to say, the Court expressly left open the question whether HHS unlawfully excluded from the numerator of the Medicare/SSI fraction those Medicare inpatients that were assigned SSI codes *other than* the three recognized by HHS. This is precisely the very question upon which Plaintiffs bring the instant action.

## THE RELEVANT MEDICARE APPEALS PROCESS

26.     At the close of its fiscal year, a provider must submit a cost report to the MAC showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. Under the Medicare program, each hospital's MAC is required to analyze and audit the hospital's annually submitted Medicare cost report and issue a Medicare Notice of Amount of Program Reimbursement (NPR), which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year. 42 C.F.R. § 405.1803.  In addition to including costs on its cost report, a hospital is also required to make a claim, or alternatively self-disallow, for any adjustment to its basic IPPS payment adjustment, such as the DSH adjustment. 42 C.F.R. § 413.24(j).

27.     If a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program reimbursement for a fiscal year, as reflected in the NPR, and the hospital satisfies the amount in controversy requirements, the hospital has a right to obtain a hearing before the Board by filing an appeal within 180 days of receiving its NPR (or any revised NPR).  42 U.S.C. §1395oo(a); 42 C.F.R. § 405.1835(a). In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals,

the Board is authorized to decide questions relating to its jurisdiction and procedure. *See* 42 U.S.C. §1395oo. Further, the Board is required to "affirm, modify, or reverse . . . ***and*** to make any other revisions on matters covered by such cost report[.]" *See* 42 U.S.C. § 1395oo(d) (emphasis added). That is, the Board cannot avoid making necessary revisions on matters properly before it.

28.     The decision of the Board on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the Board's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875, 405.1877.  The Secretary has delegated its authority under the statute to review Board decisions to the CMS Administrator.  *See* 42 C.F.R. §§ 405.1875, 405.1877.  Thus, the Secretary's final administrative decision for purposes of judicial review is either the decision of the Board or the decision of the CMS Administrator after reviewing the Board's decision. *See* 42 C.F.R. § 405.1877(a)(2).

29.     A hospital may obtain judicial review by filing suit within 60 days of receipt of the Secretary's final administrative decision in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia. 42 U.S.C. §1395oo(f)(1). The Secretary is the proper defendant in such an action. *See* 42 C.F.R. § 405.1877(a)(2). Under 42 U.S.C. §1395oo(f)(2), interest is to be awarded in favor of the prevailing party in an action brought under 42 U.S.C. §1395oo(f). Under 42 U.S.C. § 1395g(d), CMS is required to pay interest on underpayments to Medicare providers, if the underpayment is not paid within thirty days of a "final determination."

30.     Judicial relief is also available under the equitable remedy of mandamus where a hospital has a clear right to the relief sought and the Secretary has a defined and non-discretionary

duty to honor that right. *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 813 (D.C. Cir. 2001); *Lutheran Med. Ctr. v. Thompson*, 520 F. Supp. 2d 414, 419 (E.D.N.Y. 2007).

31.    Jurisdiction is also available under 28 U.S.C. § 1331 where the agency renders a final determination and there is no administrative appeal available for that determination. *Am. Chiropractic Ass'n v. Leavitt*, 431 F.3d 812, 816 (D.C. Cir. 2005).

## APPLICABILITY OF THE APA TO MEDICARE APPEALS

32.    Under 42 U.S.C. §1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the Administrative Procedure Act (APA). Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. §706(2)(A). Further, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. §706(2)(E).

## SPECIFIC FACTS PERTAINING TO THIS CASE

33.    On April 22, 2025 and again on May 16, 2025, Quality Reimbursement Services, Inc. (QRS), as the appointed representative for the Hospitals that are the Plaintiffs in this civil action, sought EJR on behalf of the Hospitals on the sole issue of; "whether regulation 42 C.F.R. §412.106(b)(1) is invalid by requiring a patient to be due a payment for Supplemental Security Income (SSI) for the month(s) he or she has an inpatient stay in order for the days of such stay to be included in the numerator of the Medicare Fraction for purposes of the Disproportionate Payment Percentage of the Disproportionate Share Hospital (DSH) add-on component of the Medicare Inpatient Prospective Payment System (IPPS).". *See* 42 U.S.C. § 1886(d)(5)(F)(vi)(I) and (II)."

(and *see,* **Exhibit B1" through B4** attached hereto). QRS four (4) Group Appeals, which were titled by the PRRB to reflect nomenclature common to such DSH appeals. The letters seeking EJR from the Board were sent to the Board reflecting either one (PRRB Case Number 13-1439G) or multiple (PRRB Case Numbers 14-2601GC; 14-4265GC; 17-1511GC) appeals, wherein each appeal was essentially based upon the same issues, and each letter was more or less ***identical*** in nature (with nearly all including a footnote discussing the three codes that *are* utilized by the SSA, *see* paragraph 21, *supra.,* but that CMS fails to request from SSA *additional* payment status codes).

34.     The gravamen of the Group Appeals as a whole concern and hence describe in greater detail the Statement of Issue set forth within each Group Appeal's Position Paper to the effect that the Board's assigned MAC failed to follow the provisions of the Medicare Act in calculating each Hospital's PPA (Provider Percentage Adjustment) which ultimately determines the increase, if any of additional DSH reimbursement to the Hospital. More specifically, that Statement of the Issue asks, "Whether the Secretary properly calculated the Provider's DSH/SSI percentage…" Moreover, each Plaintiff made clear that the specific regulations under appeal are (1) 42 C.F.R. §412.106(b)(2)(i), which after the FY 2005 IPPS final rule, limited the Medicare Fraction to "covered" patient days; (2) 42 C.F.R. §412.106(b)(2)(i)(B), by which CMS includes in the Medicare Fraction days "furnished to patients who during that month were entitled to both Medicare Part A (including Medicare Advantage (Part C)) and SSI, excluding those patients who received only State supplementation"; (3) 42 C.F.R. §412.106(b)(1) which requires a patient to be due a payment for SSI for the months he or she has an inpatient stay in order for the days of such stay to be included in the numerator of the Medicare Fraction, and (4) directions issued by CMS to the MACs for calculating the Providers' Disproportionate Patient Percentage for the costs years at issue by including non-covered (total) days.  QRS asserts that the Hospitals  challenged (1) the FY 2005

final rule as being procedurally and substantively invalid with respect to Part C days, exhausted days and MSP days; (2) section 412.106(b)(2)(i)(B) as being arbitrary and capricious for being internally inconsistent and not making a principled basis for including non-covered (total) **Medicare** days in the denominator of the Medicare Fraction but including only paid SSI days in the numerator of the Medicare Fraction; (3) section 42 C.F.R. 412.106(b)(1) as being invalid by requiring a patient to be *due* a payment for SSI to be included in the numerator of the Medicare Fraction, and (4) the directions given b+y CMS to the MACs, which followed the D.C. Circuit's decision in *Allina Health Servs. v. Sebelius*, 746 F.3d 1102 (D.C. Cir. 2014), as being an invalid substantive rule because it has substantive effect but did not go through notice and comment rulemaking procedures.  QRS further asserts that because all three of these rules, either singly or in combination, affect the amount of DSH reimbursement claimed by the Hospital, and because the Board did not have the authority to invalidate any of them, it was appropriate for the Board to grant EJR for the six groups.

35.    Regulation 42 C.F.R. 405.1837(f)(2)(ii) provides that "[w]hen the appeal is found to involve more than one factual or legal question common to each provider, the Board *must* assign a separate case number to the appeal of each common factual or legal question and conduct further proceedings in the various appeals separately for each case" (emphasis added).  The Board, however, did not, at any time throughout the appeals process bifurcate the alleged "multiple" issues into separate group appeals.

36.    Regulation 42 C.F.R. §412.106(b)(2)(i)(B), by which CMS includes in the Medicare Fraction days 'furnished to patients who during that month were entitled to both Medicare Part A (including Medicare Advantage (Part C)) and SSI, excluding those patients who received only State supplementation.'"  It is uncontested that this regulation is the source of the Secretary's longstanding

(since May 1986, 51 *Fed. Reg.* 16,772 ) policy of including only paid SSI days in the numerator of the Medicare Fraction, and it was disingenuous of the Board to claim that the Hospitals had not sufficiently identified the binding authority they were challenging.  The Board was well aware of the challenged policy and the source of that policy.  For example, the policy of including only paid SSI days in the numerator of the Medicare Fraction was discussed at length in the *Baystate Medical Center* four-day hearing before the PRRB, as well as in the subsequent litigation.  *See Baystate Medical Center v. Leavitt*, 545 F. Supp. 2d 20, 28 (D.D.C. 2008), *amended in part*, 587 F. Supp. 2d 37 (D.D.C. Nov. 7, 2008), judgment entered, 587 F. Supp. 2d 44 (D.D.C. Dec. 8, 2008).  Moreover, in response to the *Baystate* litigation, in the FY 2011 IPPS final rule, the Secretary changed certain aspects of its Medicare/SSI matching process with the Social Security Administration but reiterated its longstanding policy of including only paid SSI days in the numerator of the Medicare Fraction. *See* 75 *Fed. Reg*. at 50280-81.  In November 2013, when several of the Group Appeals were filed, the Board had to be well aware of this policy and the 2011 IPPS final rule, to the extent and surprise that on or about July 11, 2018, the Board found it was not bound by the language in the 2010 final rule, solely because it found (incorrectly) that the policy expressed in the rule was not applicable to cost years prior to the 2010 final rule.

37.     Throughout the Group Final Position Papers, it was abundantly clear that the subject group appeals do involve several of the Board's new rules, both Final as well as its frequently issued transmittal Letters sent to all DSH health care providers that not one Group appeal involved multiple legal issues, but rather the single legal issue of whether CMS's policy of including only "covered" days (i.e., days for which the patient was paid SSI) is invalid and identified regulation 412.106(b)(2) as the legal authority that the Providers were challenging. Plaintiffs are adamant that they believes there are multiple reasons or arguments as to why the policy and the regulation at issue are invalid,

but this does not change the fact there is but one legal issue involved each of the EJR Group Appeal requests. If these at the group appeals were properly filed and that EJR requests were properly submitted, but should the Board disagree, it must, in accordance with section 405.1837(f)(2), assign separate case numbers to what the Board considers to be separate legal questions.

42.     Whether the Board has jurisdiction in this case is a simple matter of knowing whether the appeal was filed timely and whether the amount in controversy was met.  The Hospitals have satisfied both these requirements, as the Board well knows.  As the record before the Board (specifically, the Model G, Statement of Providers for each of the six Groups) shows, each Provider's request for a hearing was made within 180 days of receipt of the Provider's NPR, and the amount in controversy for each Group was many times the statutory $50,000 minimum.  The Board's various statements about not having "jurisdiction" over the alleged multiple issues is inaccurate and misleading.  The regulations and Board rules (which are challenged here) prevent the Board considering more than one issue in a group appeal, but this is a matter of the Board's authority and manner in which to conduct a group appeal, and not a matter of "jurisdiction.  The Board has jurisdiction  over the six group appeals.

43.     The Board has never taken issue with the above-stated facts in the Model G, Statement of Providers for each of the thirty-nine groups. The Board implicitly acknowledged that it had jurisdiction over the six group appeals.  The Board did not question whether it had jurisdiction or ask QRS to provide any information concerning jurisdiction other than what was already provided in the record but proceeded to require QRS to identify all regulations in which the Hospitals were challenging.

44.     The statute provides that hospitals may obtain EJR if the Board *has* jurisdiction over their appeals (and the Board is without authority to decide a legal issue or issues)  – it does not say that

hospitals may obtain EJR only after the Board *determines* that it has jurisdiction.   *See* 42 U.S.C. § 1395oo(f)(1) ("if a provider of services may obtain a hearing under subsection (a) and has filed a request for such a hearing, such provider may file a request for a determination by the Board of its authority to decide the question of law or regulations relevant to the matters in controversy"). Likewise, regulation 42 C.F.R. §405.1842(a)(1) states that "this section implements provisions in section 1878(f)(1) of the Act that give a provider the right to seek EJR of a legal question relevant to a specific matter at issue in a Board appeal *if there is Board jurisdiction to conduct a hearing on the matter*" (emphasis added).   Certain regulations provide that a provider may not file a civil action unless and until the Board has *determined* that it has jurisdiction over the provider's appeal.   *See, e.g.*,   42   C.F.R.   §§405.1842(a)(4),   405.1842(g)(1)(v),   405.1842(g)(2),   405.1842(g)(3), 405.1877(a)(3).   Such regulations, and any others that purport to prevent a provider from filing a civil action unless and until the Board has determined it has jurisdiction, are contrary to the plain language of the statute and internally inconsistent with regulation 42 C.F.R. §405.1842(a)(1).

45.       Rule 8 of the PRRB Rules state that;

> Some issues may have multiple components. To comply with the requirements of 42 C.F.R. § 405.1835, appeal requests must specifically identify the items in dispute, and each contested component must be appealed as a separate issue and described as narrowly as possible using the applicable format outlined in Rule 7. Several examples are identified below, but these examples are not exhaustive lists of categories or issues.
> Rule 8 A. lists nine non-exclusive  "examples" of DSH sub-issues.

46.       The PRRB's determination that no more than one "issue" can be presented in a group appeal is a final determination and is appealable to this court under 28 U.S.C. § 1331 under the exception in *Bowen v. Michigan Academy of Family Physicians*, 476 US 667 ((1986).

47.       The PRRB's determination that the Hospitals appealed more than one "issue" in their group appeals can be presented in a group appeal is a final determination and is appealable to this court

under 28 U.S.C. § 1331 under the exception in *Bowen v. Michigan Academy of Family Physicians*, 476 US 667 ((1986).

## Count I

### Judicial Review Under the Medicare Act and the APA
### (The Board's Actions are Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)

33.     The Hospitals incorporate by reference all preceding paragraphs of this Complaint.

34.     The APA prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. §706(2)(A), or that is "unsupported by substantial evidence," *id.* §706(2)(E).

35.     The Board's dismissal of the appeals listed in Exhibit F and Exhibit B was arbitrary and capricious, an abuse of discretion, and otherwise contrary to the Medicare Act.

## Count II

### Judicial Review under 42 U.S.C. § 1395oo(f)(1), 28 U.S.C. § 1331 and the APA
### (CMS's Determination was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)

36.     The Hospitals incorporate by reference all preceding paragraphs of this Complaint.

37.     CMS's transmittals 12747 and 12785 are each a final determination within the meaning of 42 U.S.C. § 1395oo(a)(1)(A)(ii) for which the Hospitals are entitled to EJR pursuant to 42 U.S.C. § 1395oo(f)(1) because the Board has jurisdiction over the Hospitals' appeals, and it does not have the authority to declare invalid transmittals 12747 and 12785.

38.     Alternatively, if transmittals 12747 and 12785 are not each a final determination within the meaning of 42 U.S.C. § 1395oo(a)(1)(A)(ii), they are final determinations for which there is no administrative appeal. Therefore, this Court has jurisdiction to hear the Hospitals'

appeal of this final determination. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986).

39.    The APA prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. §706(2)(A), or that is "unsupported by substantial evidence," id. §706(2)(E).

40.    CMS's issuance of transmittals based on a rule that is contrary to law, which bound CMS, was arbitrary and capricious, an abuse of discretion, and contrary to the Medicare Act.

## **REQUEST FOR RELIEF**

For these reasons, the Hospitals respectfully request that this Court enter an order:

a.    For the sake of judicial expediency, granting Judicial Review and a stay of such Judicial Review pending the Supreme Court's decision in decision in *Advocate Christ Medical Center, et al. v. Becerra,* No. 22-5214 (U.S. 2023).

b.    Alternatively, reversing the Board's dismissal of the Hospitals' appeals listed in Exhibit F.

c.    Following the reinstatement of the Hospitals' appeals listed in Exhibit F, directing the Secretary to direct the Board to reverse its decision in Exhibit E and grant EJR based on Exhibits B, C, and D that were submitted by QRS on behalf of the Hospitals.

d.    Subsequently, granting a stay of the Judicial Review pending the Supreme Court's decision in decision in *Advocate Christ Medical Center, et al. v. Becerra,* No. 22-5214 (U.S. 2023).

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

e.    Awarding the Hospitals' costs and reasonable attorneys' fees, and for interest and such

other and further relief that the Court deems appropriate.

Dated: June 16, 2025                    Respectfully submitted,

<u>/s/ Alan J. Sedley</u>
Alan J. Sedley, Esq. Bar No. OH0017
ALAN J. SEDLEY LAW CORP.
18880 Douglas, Suite 417
Irvine, CA 92612
Tel: (818) 601-0098
*Attorney for the Hospitals*